UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA J. EISNER,<br><br>    Plaintiff,<br><br>    v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al.<br><br>    Defendants. | Case No. 12-cv-01238-JST<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION OF CONTRACTUAL ISSUE** |

In this ERISA action, Plaintiff Debra Eisner moves for summary adjudication of the following question: whether the "self-reported symptoms" limitation in Defendant Prudential Insurance Company of America's ("Prudential") group disability policy applies to claims based on fibromyalgia. ECF No. 31 ("Mot."). The Court concludes that the limitation does not apply when the claimant's fibromyalgia was diagnosed pursuant to standard clinical examinations accepted in the practice of medicine.[1] The Court will therefore grant the motion.

I.  **LEGAL STANDARDS**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). A dispute is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, and material only if the fact may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). The Court must draw all reasonable inferences in the light most favorable to the non-moving party. Johnson v. Rancho Santiago Cmty. Coll. Dist., 623 F.3d 1011, 1018 (9th Cir. 2010). However, unsupported conjecture or conclusory statements do not create a genuine dispute as to material fact and will not defeat summary judgment. Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008). Partial summary judgment is appropriate for "part of each claim or defense" provided

---

[1] The Court reaches no conclusion here as to whether the "self-reported symptoms" limitation applies when the claimant's fibromyalgia was not diagnosed in this manner.

1  there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of
2  law. Fed. R. Civ. P. 56(a).

3        Where the moving party bears the burden of proof at trial, that party bears the initial
4  burden of producing evidence that would entitle it to a directed verdict at trial. See C.A.R. Transp.
5  Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000). If the moving party does
6  not satisfy its initial burden, then the non-moving party has no obligation to produce anything, and
7  summary judgment must be denied. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099,
8  1102 (9th Cir. 2000). If, however, the moving party satisfies its initial burden of production, then
9  the non-moving party must produce admissible evidence to show there exists a genuine issue of
10 material fact. Id. at 1102–03.

11       "A party asserting that a fact cannot be or is genuinely disputed must support the assertion
12 by: (A) citing to particular parts of materials in the record, including depositions, documents,
13 electronically stored information, affidavits or declarations, stipulations (including those made for
14 purposes of the motion only), admissions, interrogatory answers, or other materials; or
15 (B) showing that the materials cited do not establish the absence or presence of a genuine dispute,
16 or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ.
17 P. 56(c)(1). Affidavits and declarations "must be made on personal knowledge, set out facts that
18 would be admissible in evidence, and show that the affiant or declarant is competent to testify on
19 the matters stated." Fed. R. Civ. P. 56(c)(4). If a party fails to support an assertion of fact, the
20 Court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact
21 undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting
22 materials — including the facts considered undisputed — show that the movant is entitled to it; or
23 (4) issue any other appropriate order." Fed. R. Civ. P. 56(e). "The choice among possible orders
24 should be designed to encourage proper presentation of the record." Adv. Cttee. Notes to 2010
25 Amendments to Fed. R. Civ. P. 56(e).

26       However, "[w]here the evidentiary matter in support of the motion does not establish the
27 absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary
28 matter is presented." Adv. Cttee. Notes to 1963 Amendments to Fed. R. Civ. P. 56(e). The

1  moving party's evidentiary burden is not extinguished by the opposing party's failure to respond;
2  the moving party must affirmatively establish its entitlement to summary judgment. See Martinez
3  v. Stanford, 323 F.3d 1178, 1183 (9th Cir. 2003) (quoting Fed. R. Civ. P. 56(a)).

## II. FACTS

Plaintiff stopped working on March 15, 2010, due to chronic fatigue syndrome, myalgia and myositis, allergic rhinitis, osteoarthritis, hip pain, and depression. Mekari Decl., ECF No. 37-1, Ex. 1 ("Denial Letter"), p. 4. By letter dated November 23, 2010, Prudential denied Plaintiff's claim for disability benefits on the grounds that her medical conditions did not restrict or limit her sufficiently to qualify as disabled. Id. The parties stipulated that Plaintiff pursued an internal appeal of this determination, and that Prudential continued to deny Plaintiff disability benefits. Thus, Plaintiff is entitled to seek relief in this Court.[2] See also ECF No. 37 ("Opp.") p. 4 (acknowledging that Plaintiff properly initiated this appeal).

On June 13 and 14, 2011, Plaintiff was evaluated by Pacific Fatigue Laboratory on June 13 and 14, 2011. On June 30, 2011, she was examined by Dr. Stuart Silverman, whose examination, included an eighteen-point trigger test. Plaintiff submitted the results of those examinations to Prudential on October 12, 2011. Id. In response, Prudential requested two independent medical examinations. The results of those examinations, together with excerpts of medical notes made by Plaintiff's treating physicians, are also before the Court. Mekari Decl., Exs. 3–6.

Plaintiff Debra Eisner filed this appeal of Prudential's denial of disability benefits pursuant to ERISA on March 12, 2012. ECF No. 1 ("Compl.").

The group disability policy at issue provides benefits for disabled employees who "are unable to perform the material and substantial duties" of their regular occupation due to sickness or injury, provided the disabled employee is under the regular care of a doctor and the employee experiences a loss in monthly earnings of twenty percent or more "due to that sickness or injury." Baum Decl., ECF No. 32, Ex. C ("Policy"), p. 11. The policy limits disability benefits to two

---

[2] Prudential does dispute whether Plaintiff is entitled to seek a decision regarding the "self-reported symptoms" limitation, as discussed below, but Prudential does not contest that Plaintiff exhausted her administrative remedies with respect to her fibromyalgia claim because Prudential decided that she was not disabled within the meaning of the policy.

years unless the disabled employee is "unable to perform the duties of any gainful occupation" subject to certain limitations. Policy, p. 11.

The policy also limits benefits to two years pursuant to the "self-reported symptoms" clause: "Disabilities due to a sickness or injury which, as determined by Prudential, are primarily based on self-reported symptoms" are limited to twenty-four months. Policy, p. 21. "Self-reported symptoms means the manifestations of your condition, which you tell your doctor, that are not verifiable using tests, procedures, and clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headache, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy." Id. Prudential never applied the self-reported symptoms limitation in reviewing Plaintiff's claim because it found in the first instance that she did not qualify as disabled.

## III. ANALYSIS

Plaintiff seeks partial summary adjudication on the question of whether the self-reported symptoms limitation applies to her disability benefits claim. Defendant opposes the motion on the grounds that (1) Plaintiff failed to exhaust her administrative remedies with respect to the application of the limitation to her claim, and that (2) the limitation applies to claims based on fibromyalgia.

### A. Exhaustion of Administrative Remedies — "Issue Exhaustion"

The parties dispute whether Plaintiff adequately exhausted her administrative remedies with respect to the question of the self-reported symptoms limitation. Defendant argues that the instant motion, and the Court's consideration of the limitation, are premature because Prudential never applied the limitation to Plaintiff's claim; Prudential denied benefits on the grounds that Plaintiff did not qualify as disabled at all, and therefore never reached the question of whether the limitation applies. Plaintiff argues that "issue exhaustion" — the argument that an ERISA disability claimant must present to the plan administrator all contested issues prior to seeking judicial review — is not required in the Ninth Circuit.

The exhaustion of remedies doctrine as it relates to ERISA is grounded in judicial precedent. The statute itself has no such requirement. Instead, it authorizes civil suit by a plan

4

participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, *or to clarify his rights to future benefits* under the terms of the plan." 29 U.S.C § 1132 (emphasis added). Under Ninth Circuit precedent, however, an ERISA claimant seeking to overturn a denial of benefits "must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court." Diaz v. United Agric. Employee Welfare Benefit Plan & Trust, 50 F.3d 1478, 1483 (9th Cir.1995). That prudential exhaustion requirement is not jurisdictional. See Vaught v. Scottsdale Healthcare Corp. Health Plan, 546 F.3d 620, 626 (9th Cir. 2008). It is a rule borne from caselaw subject to certain exceptions.

Issue exhaustion is not the same as remedy exhaustion. See generally Sims v. Apfel, 530 U.S. 103, 107 (2000) (discussing development of issue exhaustion doctrine). Analyzing the Supreme Court's decision in Sims, the Ninth Circuit in Vaught held that issue exhaustion does not apply in ERISA cases because the statute contemplates "that a claimant's appeal will be heard by an impartial decisionmaker who may review new information in addition to information from the previous denial," and because the statute does not warn claimants that an issue exhaustion requirement will apply. Vaught, 546 F.3d at 631–32. See also Liss v. Fid. Employer Servs. Co., No. 11-2124, 2013 WL 677280, at *7 (6th Cir. Feb. 26, 2013) (applying Vaught). Wolf v. Nat'l Shopmen Pension Fund, 728 F.2d 182, 186 (3d Cir. 1984) (permitting denied claimant to assert alternate theory for recovery not presented to plan administrator because "ERISA does not require either issue or theory exhaustion; it requires *only* claim exhaustion").

The decision in Vaught applies here. Plaintiff appeals the denial of disability benefits, having exhausted her administrative remedies to obtain them. More than two years after the denial, Plaintiff seeks, in addition to a reversal of the denial, a finding that, as a matter of law, her entitlement to disability benefits is not limited by the self-reported symptoms clause, which is particularly relevant to her now that the two-year limitation period in that clause has expired. Unlike in Vaught and similar cases, Prudential never determined whether Plaintiff is entitled to more than twenty-four months of benefits because it denied Plaintiff benefits outright. But that distinction does not prevent the Court from considering the issue, since it is subsidiary to Plaintiff's appeal of the denial of benefits. Plaintiff's request for summary adjudication on the

5

meaning of the self-reported symptoms limitation in her disability policy is therefore properly before the court.

### B. Standard of Review

District courts review ERISA claim denials *de novo* unless the benefit plan unambiguously retains for the administrator or fiduciary the discretion to grant or deny claims and to interpret plan terms. Feibusch v. Integrated Device Technology, Inc. Employee Benefit Plan, 463 F.3d 880, 883 (9th Cir. 2006). In that circumstance, courts review the denial of benefits for an abuse of discretion. Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008). If the benefit plan grants discretion to an administrator or fiduciary who is operating under a conflict of interest, the court must weigh that conflict as a factor in determining whether there is an abuse of discretion. Id. (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).

Because Prudential never determined whether the self-reported symptoms limitation applies to Plaintiff's claim, the appropriate course here is to interpret the terms of the disability policy without deference to the plan. Cf. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 972 (9th Cir. 2006) (de novo review appropriate "when an administrator fails to exercise discretion"); Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan, 349 F.3d 1098, 1106 (9th Cir. 2003) ("'Where a trustee fails to act or to exercise his or her discretion, *de novo* review is appropriate.'") (quoting Gritzer v. CBS, Inc., 275 F.3d 291, 296 (3d Cir.2002)); Vaught v. Scottsdale Healthcare Corp. Health Plan, No. 05-cv-718-PHX, 2009 WL 649806, at *2 (D. Ariz. Mar. 10, 2009) (applying *de novo* standard on remand where issue had not previously been considered by plan administrator).[3]

### C. Self-Reported Symptoms Limitation

Plaintiff's motion does not challenge Prudential's denial of disability benefits *per se*. Although Plaintiff will challenge the denial in later proceedings if necessary, Plaintiff now seeks summary adjudication of the question whether the self-reported symptoms limitation applies to

---

[3] As discussed more fully below, a contrary interpretation of the self-reported symptoms limitation than the one set forth here would be unreasonable and would constitute an abuse of discretion on the part of the plan, so the standard of review is not material.

Plaintiff's disability claim.[4]

The dispute stems from the phrase "[d]isabilities due to a sickness or injury which . . . are primarily based on self-reported symptoms." Policy, p. 21. Plaintiff argues that the self-reported symptoms limitation applies to sicknesses or injuries that are primarily diagnosed via self-reported symptoms, and not to conditions that are diagnosed via objective medical findings. While it is not entirely clear how Prudential's construction of this phrase differs from Plaintiff's, it is clear that Prudential believes that Plaintiff's diagnosis was based entirely on her subjective descriptions to her physicians regarding her symptoms. In fact, in Prudential's view, fibromyalgia is *always* subject to the self-reported limitation, because that is the only way the disease can be diagnosed.

Substantial authority holds that the application of the "self-reported" limitation depends on the method of diagnosis of the sickness or injury that led to disability, and not the symptoms of the claimed disability itself. Rutherford v. Scene 7 Inc. Long Term Disability Plan, No. 07-06426-WHA, 2008 WL 2788191 (N.D. Cal. July 18, 2008); Weitzenkamp v. Unum Life Ins. Co. of Am., 661 F.3d 323 (7th Cir. 2011); Chronister v. Baptist Health, 442 F.3d 648 (8th Cir. 2006).

In Weitzenkamp, the plaintiff challenged her ERISA plan's discontinuation of disability benefits through application of the same self-reported symptoms limitation to her disability claim, which was based on fibromyalgia. 661 F.3d at 326. The Seventh Circuit rejected the argument that the limitation applies to any disability claim based on self-reported symptoms, instead holding that it applies only to disability claims based on medical conditions that are diagnosed via self-reported symptoms:

> For most illnesses or injuries, the disabling aspect is not the disease itself, but the pain, weakness, or fatigue caused by that illness or injury. Even diseases that are extremely likely to cause an inability to work, such as stage IV cancer or advanced heart disease, are disabling because of the pain, weakness or fatigue. Under Unum's interpretation, however, those diseases would fall within the twenty-four-month limitation because pain, weakness and fatigue are self-reported symptoms that are difficult if not impossible to verify using objective medical evidence.

---

[4] According to Plaintiff, a decision on this question will determine whether Plaintiff is entitled to $109,200 in benefits (if the limitation applies) or $637,000 (if it does not), assuming Plaintiff succeeds on her underlying claim.

7

Id. at 330. Applying the abuse of discretion standard, the Weitzenkamp court held that the plan's interpretation of the limitation was unreasonable. Id. at 331. See also Chronister, 442 F.3d at 656 (affirming district court's remand to the plan administrator for further findings after finding denial of benefits of fibromyalgia claim based solely on self-reported symptoms limitation was unreasonable).

In Rutherford, Judge Alsup denied summary judgment in favor of Prudential based on the same self-reported symptoms limitation where the claimant presented evidence that her fibromyalgia was diagnosed via objective clinical examinations. 2008 WL 2788191, at *1. Relying on Chronister, Judge Alsup held that, provided the claimant's fibromyalgia "was diagnosed by a clinical examination standardly accepted in medicine," her claim did not fall under the self-reported symptoms limitation. Id. at *6. Applying *de novo* review (by stipulation of the parties), Judge Alsup then ruled that a genuine issue of material fact remained as to whether the claimant was disabled within the meaning of the policy. Id. at * 8.

In Weitzenkamp, Chronister, and Rutherford, the claimants were each diagnosed with fibromyalgia via the eighteen-point trigger test. In each case, the court found that the trigger test is a "clinical examination standardly accepted in medicine." Weitzenkamp, 661 F.3d at 331 (application of self-reported symptoms limitation to fibromyalgia claim was unreasonable because "the trigger test can 'more or less objectively' establish the disease where the findings of the test are consistent with fibromyalgia) (quoting Hawkins v. First Union Corp. Long–Term Disability Plan, 326 F.3d 914, 919 (7th Cir. 2003)); Chronister, 442 F.3d at 656 ("[T]rigger-point test findings consistent with fibromyalgia constitute objective evidence of the disease."); Rutherford, 2008 WL 2788191, at *6 ("[A]s long as Ms. Rutherford's fibromyalgia was diagnosed by a clinical examination standardly accepted in medicine (*e.g.,* the trigger test), her claim did not fall under the self-reported symptoms limitation.").

Prudential attempts to distinguish the out-of-circuit cases as non-binding precedent, and to distinguish Rutherford on several other grounds. First, Prudential argues that Judge Alsup's conclusion regarding the trigger test was dicta because the holding there was merely that, under *de novo* review, Prudential was not entitled to summary judgment on the question of whether the

8

claimant was disabled. This argument is not persuasive: Judge Alsup squarely held as a matter of law that the claimant's fibromyalgia claim "did not fall under the self-reported symptoms limitation" provided her condition was diagnosed via standard clinical examinations. Id.

Prudential next argues that the decision in Rutherford is counter to the Ninth Circuit's decision in Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 872 (9th Cir. 2004) overruled on other grounds by Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 969 (9th Cir. 2006).[5] In Jordan, the Ninth Circuit affirmed the district court's entry of summary judgment against a claimant with fibromyalgia, and affirmed the disability plan's denial of benefits pursuant to the abuse of discretion standard, because the "evidence that she was disabled was slight, and its reliability was questionable." Id. at 882.

Prudential focuses on the Jordan court's observation that "fibromyalgia's cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. . . . Objective tests are administered to rule out other diseases, but do not establish the presence or absence of fibromyalgia." Id. at 872. But, as the court in Rutherford observed, the Ninth Circuit in Jordan did not address a self-reported symptoms limitation, and did not hold that fibromyalgia claims cannot qualify for disability benefits. It merely held that the record in that case did not require a reversal of the plan's determination that the claimant was not disabled. And the Jordan court's observation that fibromyalgia symptoms are primarily subjective was coupled with the recognition that fibromyalgia is a physical, rather than mental disease, subject to standard diagnostic criteria promulgated by the American College of Rheumatology. Id. at 872–73. In that case, the record supported the plan's denial of benefits. In other cases evaluating fibromyalgia claims, it has not. See, e.g., Chellino v. Kaiser Found. Health Plan, Inc., 352 F. App'x 164, 166 (9th Cir. 2009) (denial of benefits of disability claim based on fibromyalgia pursuant to trigger test was unreasonable). Those considerations are not relevant to the question of

---

[5] Prudential also relies on Mobayen v. Standard Ins. Co., 358 Fed. App'x 893, 895 (9th Cir. 2009). In Mobayen, the Ninth Circuit upheld the plan's discontinuation of disability benefits for fibromyalgia after eighteen months "because the policy defined fibromyalgia as a limited condition." Id. Because fibromyalgia was expressly limited in that plan, that decision is not relevant to the limitation here.

9

whether the limitation applies to fibromyalgia claims; it merely recognizes that the underlying review of a fibromyalgia claimant's disability claim will necessarily take into account subjective symptoms such as pain and fatigue.

This Court finds the reasoning of Rutherford, Weitzenkamp and Chronister persuasive. Regardless of whether a fibromyalgia claimant qualifies as disabled, Prudential's self-reported symptoms limitation does not apply to her claim if the condition is diagnosed via standard clinical examinations such as the eighteen-point trigger test.

That conclusion leaves only the question of whether Plaintiff's fibromyalgia in this case was diagnosed pursuant to standard clinical examinations. With her motion, Plaintiff submitted the independent medical examination of Dr. Stuart L. Silverman, Professor of Medicine and Rheumatology at the University of California, Los Angeles, dated June 30, 2011. Dr. Silverman performed the eighteen-point trigger test and found tenderness in all eighteen of the trigger points. Baum Decl., Ex. A p. 5. Plaintiff also submitted a report from the Pacific Fatigue Laboratory, which performed a global functional evaluation on June 13 and 14, 2011. The evaluation examined Plaintiff's metabolic, cardiovascular, pulmonary, and cognitive function via a cardiopulmonary exercise test for baseline results and a re-test while Plaintiff experienced various physical stressors. Baum Decl., Ex. B p. 1. The global functional evaluation revealed a "moderately to severely impaired" oxygen consumption, abnormal pulmonary function, which "can result from respiratory muscle fatigue," and an abnormal recovery time that "should be considered an extreme reaction to physical activity." Id. p. 2. The laboratory concluded that the "observed physiological abnormalities are inconsistent with poor effort," and that "[e]ven normal activities of daily living, e.g., house-cleaning, walking at 3-4 mph, would severely tax [Plaintiff's] energy system. Most job tasks will demand more energy than can be aerobically generated and sustained. This is both an objective measure of fatigue and a quantifiable limitation of [Plaintiff's] ability to function." Id. p. 6.

Prudential does not dispute that Plaintiff underwent the trigger test and global functional evaluation, nor does Prudential dispute that Plaintiff was diagnosed with fibromyalgia as a result of the trigger test. Instead, Prudential argues that Plaintiff's physician notes reveal she self-

reported symptoms of pain and exhaustion, and that her diagnosis was therefore based on self-reported symptoms. Prudential also points to evidence in the record indicating that, at times, Plaintiff's pain was "under control" and that her fatigue was "not as bad as when she was working." Prudential relies on the report of its independent medical examination, which it argues "demonstrated that Plaintiff's diagnosis was based on self-reported symptoms" because the examiner concluded: "[t]he documented physical examinations are unremarkable for evidence of impairment[.]" Opp. p. 12. Those arguments focus not on whether Plaintiff's condition was diagnosed via standard clinical examinations, but rather on whether her condition qualifies as a disability within the meaning of Prudential's plan — a question that is not currently before the Court. Though Prudential disputes the severity of Plaintiff's condition, Prudential does not dispute that Plaintiff was diagnosed with fibromyalgia pursuant to the eighteen-point trigger test.

Finally, Prudential argues that Plaintiff's trigger point test cannot be considered by the Court because it was performed after Plaintiff was initially denied benefits. But the statute authorizes Plaintiff to sue in order to clarify her entitlement to "future benefits" as well as to appeal the determination made by Prudential. 29 U.S.C § 1132. As Prudential explains, Plaintiff seeks a decision on "the question of whether the self-reported symptom limitation should apply to Plaintiff's claim if she is later determined to be disabled." ECF No. 37 p. 12. That is the question the Court answers here.

For the foregoing reasons, the Court finds that Prudential's self-reported symptoms limitation does not apply to Plaintiff's disability claim.

**IV.   CONCLUSION**

Because there is no genuine dispute of material fact concerning how Plaintiff was diagnosed with fibromyalgia, the Court finds the issue suitable for summary adjudication. Prudential's self-reported symptoms limitation does not apply to fibromyalgia claims that are based on standard clinical examinations such as the eighteen-point trigger test, which was used to

/ / /

/ / /

/ / /

diagnose Plaintiff's condition here.  Accordingly, the Court rules as a matter of law that the self-reported symptoms limitation does not apply to Plaintiff's disability claim.

**IT IS SO ORDERED**.

Dated:  July 25, 2013

_____
JON S. TIGAR
United States District Judge